# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

NAGESH PALAKURTHI,

               Plaintiff,

v.

WAYNE COUNTY, in its municipal
capacity, and ERIC SABREE, in his
official capacity current Wayne County
Treasurer,

               Defendants.

Case No. 21-10707

Hon. Linda V. Parker

---

## DEFENDANTS' MOTION TO DISMISS

Defendants Wayne County and its Treasurer, Eric R. Sabree (together, "Defendants"), move this Court for an Order dismissing the claims against them with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). In accordance with LR 7.1(d), on May 18, 2021, counsel for Defendants requested concurrence in this Motion from Plaintiff's counsel, via email, by explaining its legal basis, including the fact that Plaintiff's claims were barred by collateral estoppel, *res judicata*, and the *Rooker-Feldman* doctrine, and to request concurrence in the relief sought. As of the time of filing this motion, Plaintiff's counsel had not responded to that request.

WHEREFORE, Defendants request that this Court grant their Motion and enter an Order dismissing all claims against them with prejudice.

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: /s/ Nasseem S. Ramin
    Theodore W. Seitz (P60320)
    Nasseem S. Ramin (P73513)
    *Attorneys for Defendants*
    400 Renaissance Center, 37th Floor
    Detroit, MI 48243
    (313) 568-6800
    tseitz@dykema.com
    nramin@dykema.com

Dated:  May 21, 2021

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN  48243

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NAGESH PALAKURTHI,

        Plaintiff,

v.

WAYNE COUNTY, in its municipal capacity, and ERIC SABREE, in his official capacity current Wayne County Treasurer,

        Defendants.

Case No. 21-10707

Hon. Linda V. Parker

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES PRESENTED..................................................... I

MOST CONTROLLING AUTHORITY.................................................... II

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 2

STANDARD OF DECISION ...................................................................... 6

ARGUMENT .............................................................................................. 7

I. PLAINTIFF'S CLAIMS ARE BARRED BY *RES JUDICATA* AND COLLATERAL ESTOPPEL............................................................. 7

II. PLAINTIFF'S CLAIMS ARE BARRED BY THE *ROOKER-FELDMAN* DOCTRINE.............................................................. 10

III. DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY. .......... 12

IV. CLAIMS AGAINST TREASURER SABREE SHOULD BE DISMISSED. ............................................................................. 15

V. PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE U.S. CONSTITUTION SHOULD BE DISMISSED. ........................... 16

VI. *RAFAELI* IS PROSPECTIVE ONLY AND BARS THESE CLAIMS. ....... 18

VII. THE APPLICABLE LIMITATIONS PERIOD BARS PLAINTIFF'S CLAIMS. ............................................................. 25

CONCLUSION ....................................................................................... 25

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott v. Michigan,*
474 F.3d 324 (6th Cir. 2007) ............................................................................10

*Am. BioCare Inc. v. Howard & Howard Attys, PLLC,*
702 F. App'x 416 (6th Cir. 2017) ........................................................................6

*Am. Trucking Ass'n v. Smith,*
496 U.S. 167 (1990) ...........................................................................................19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .........................................................................................6, 7

*Brotherton v. Cleveland,*
173 F.3d 552 (6th Cir. 1999) ............................................................................13

*Browning v. Levy,*
283 F.3d 761 (6th Cir. 2002) ..............................................................................7

*Cady v. Arenac Cty.,*
574 F.3d 334 (6th Cir. 2009) ............................................................................13

*Citizens in Charge, Inc. v. Husted,*
810 F.3d 437 (6th Cir. 2016) ............................................................................15

*DLX, Inc. v. Kentucky,*
381 F.3d 511 (6th Cir. 2004) ..............................................................................6

*District of Columbia Court of Appeals v. Feldman,*
460 U.S. 462 (1983) ...........................................................................................10

*Doe v. Claiborne Cty.,*
103 F.3d 495 (6th Cir. 1996) ............................................................................16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
544 U.S. 280 (2005) ...........................................................................................10

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

*Freed v. Thomas*,
2018 U.S. Dist. LEXIS 190424 (E.D. Mich. Nov. 7, 2018) ........................ 14, 17

*Freed v. Thomas*,
976 F.3d 729 (6th Cir. 2020) ................................................................. 17

*Givens v. Homecomings Fin.*,
278 Fed. App'x. 607 (6th Cir. 2008) ....................................................... 12

*Hawthorne-Burdine v. Oakland Univ.*,
158 F. Supp. 3d 586 (E.D. Mich. 2016) .................................................. 16

*Kentucky v. Graham*,
473 U.S. 159 (1985) ............................................................................ 13

*Kost v. Kreeger*,
832 Fed. App'x. 438 (6th Cir. 2021) ...................................................... 12

*Ladd v. Marchbanks*,
971 F.3d 574 (6th Cir. 2020) ................................................................ 15

*Lawrence v. Welch*,
531 F.3d 364 (6th Cir. 2008) ................................................................ 10

*Martinez v. Dep't of Homeland Security*,
502 F. Supp. 2d 631 (E.D. Mich. 2007) ................................................... 6

*McNeil v. Cmty. Prob. Servs., LLC*,
945 F.3d 991 (6th Cir. 2019) ................................................................ 15

*Monell v. New York City Dep't. of Soc. Servs.*,
436 U.S. 658 (1978) ............................................................................ 16

*Montana v. United States*,
440 U.S. 147 (1979) .............................................................................. 8

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923) ............................................................................ 10

*Vanderkodde v. Mary Jane M. Elliott, P.C.*,
951 F.3d 397 (6th Cir. 2020) ................................................................ 12

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

*Wayside Church v. Van Buren County*,
   847 F.3d 812 (6th Cir. 2017) ........................................................................ 14, 17

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ........................................................................................ 16

**State Cases**

*Bolt v. City of Lansing*,
   238 Mich. App. 37 (1999) .............................................................................. 20

*Bott v. Comm'n. of Nat. Res.*,
   415 Mich. 45 (1982) ...................................................................................... 21

*Eaton Co Bd of Co Pct Comm'rs v Schultz*,
   205 Mich. App. 371 (1994) ............................................................................ 7

*Guerrero v. Dept of Corr.*,
   165 Mich. App. 192 (1987) ............................................................................ 24

*Jahner v. Dept. of Corr.*,
   197 Mich. App. 111 (1992) ........................................................................ 21, 23

*James A Welch Co, Inc. v. State Land Office Bd.*,
   295 Mich. 85 (1940) ...................................................................................... 20

*Krench v. Michigan*,
   277 Mich. 168 (1936) .................................................................................... 20

*Lindsey v. Harper Hosp.*,
   455 Mich. 56 (1997) .................................................................................. 18, 19

*Meltzer v. State Land Office Bd.*,
   301 Mich. 541 (1942) .................................................................................... 20

*Placek v. City of Sterling Hts.*,
   405 Mich. 638 (1979) .................................................................................... 21

*Pohutski v. City of Allen Park*,
   465 Mich. 675 (2002) ........................................................................ 21, 22, 23, 24

*Rafaeli, LLC v. Oakland Cty*,
   505 Mich. 429 (2020) ................................................................................ *passim*

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

*Tebo v. Havlik*,
    418 Mich. 350 (1984) ......................................................................22

*Wilcox v. Sealy*,
    132 Mich. App. 38 (1984) ..................................................................8

*Williams v. Detroit*,
    364 Mich. 231 (1961) ......................................................................19

**State Statutes**

MCL 211.78*l* ......................................................................................6

MCL 211.78m(8) ....................................................................13, 14, 22

MCL 211.78t .................................................................................5, 6, 25

**Rules**

Rule 12(b)(1) ......................................................................................6

Rule 12(b)(6) ......................................................................................6

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether this Court should grant Defendants' Motion and dismiss Plaintiff's

Complaint – the fifth challenge to a 2015 property tax foreclosure – where:

> (1) Plaintiff's claims are barred by *res judicata* and collateral estoppel;
> (2) the claims are barred by the *Rooker-Feldman* doctrine; (3)
> Defendants are entitled to sovereign immunity; (4) Treasurer Sabree is
> entitled to qualified immunity; (5) Defendants' implementation of the
> Tax Act did not violate the U.S. Constitution; and (6) the *Rafaeli*
> decision is prospective only?

| | |
|---|---|
| Defendants answer: | Yes |
| Plaintiff would answer: | No |
| The Court should answer: | Yes |

DYKEMA GOSSETT ● A PROFESSIONAL LIMITED LIABILITY COMPANY ● 400 RENAISSANCE CENTER ● DETROIT, MICHIGAN  48243

i

## <u>MOST CONTROLLING AUTHORITY</u>

Defendants rely on the Michigan General Property Tax Act, MCL 211.1 *et seq*., *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rafaeli, LLC v. Oakland Cty*, 505 Mich. 429 (2020); and the additional authorities cited herein.

.

## **INTRODUCTION**

This is Plaintiff Nagesh Palakurthi's ("Plaintiff's) ***fifth*** attempt to contest the completed tax foreclosure of real property commonly known as 42671 Preswick Court, in Van Buren Township, Michigan (the "Property"). One such action remains pending in front of the Michigan Supreme Court. Even so, Plaintiff attempts to relitigate his claims in this Court. Simply put, Plaintiff has exhausted every possible permutation of claim he could possibly bring related to the Property. This action is an abuse of the Court's time and resources because his claims are barred by the doctrines of *res judicata* and collateral estoppel, as well as the *Rooker-Feldman* doctrine.

Relying on the Michigan Supreme Court's recent ruling in *Rafaeli, LLC v. Oakland Cty*, 505 Mich. 429 (2020), Plaintiff has reformatted his allegations to purport to include claims that Defendants violated the Michigan and United States Constitutions. But regardless of how Plaintiff labels his claims, the Complaint is clear that his true dispute is with Defendants' alleged non-compliance with Michigan's Tax Act—an issue that has repeatedly been decided in Defendants' favor. Moreover, Plaintiff's action is a direct attack on the Judgment of Foreclosure entered by the Wayne County Circuit Court, in an attempt to shield himself from the outcome of that judgment, *i.e.*, loss of the Property. Such actions constitute an

1

impermissible appeal to the federal district court of a ruling by a state court, and

Plaintiff's Complaint should be dismissed.

## **BACKGROUND**

This case is one of many brought by various plaintiffs in state and federal

courts, challenging tax foreclosures conducted by Michigan counties in accordance

with the Tax Act.[1]   This suit is also one of several brought by Mr. Palakurthi to

challenge a state court foreclosure.

***The First Prior Action.***   On or about March 20, 2015, following Plaintiff's

failure to pay property taxes due and owing, the Wayne County Circuit Court entered

a judgment of foreclosure (the "Judgment of Foreclosure") in Wayne County's favor

against the Property (the "Foreclosure Action").   **Ex. 1**, Judgment of Foreclosure.

Plaintiff filed a motion to set aside the Judgment of Foreclosure, arguing that the

County failed to give Plaintiff proper notice, and thus the foreclosure was invalid.

The motion was denied, with the Wayne County Circuit Court holding that Plaintiff

---

[1] Under the Tax Act, on March 1 of each year, all unpaid property taxes from the prior year are "returned delinquent" to the county treasurer for collection, and tax-collection procedures begin. MCL 211.78 *et seq*. Multiple notices—both of delinquency and of potential foreclosure—must be provided to the owner. *Id.* § 211.78f. And if, after these notices, the owner still fails to pay the taxes owed, the property is relinquished subject to foreclosure and the right of redemption. *Id.* § 211.78g(1). If the county chooses foreclosure, the treasurer must file a petition for foreclosure in a Michigan trial court. *Id.* § 211.78 (h). Following a hearing and additional process, the court will award the county fee simple title to the property if it is not redeemed by a certain date. *Id.* § 211.78k(6).

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

""has not been deprived of due process, and . . . the Foreclosure Judgment of March 20, 2015 is valid." **Ex. 2**, Order Denying Motion to Set Aside Foreclosure.

**_The Second Prior Action._** On or about March 20, 2017, Plaintiff filed an action in the Michigan Court of Claims, contending for a second time that the foreclosure was improper because he did not receive proper notice (the "Second Prior Action"). Defendants filed a motion for summary disposition, and on December 27, 2017, the Court of Claims entered an order granting the motion for summary disposition and dismissing Plaintiff's complaint. **Ex. 3**, Order Dismissing Second Prior Action.

**_The Third Prior Action._** Plaintiff appealed the Order Dismissing Second Prior Action to the Michigan Court of Appeals. **Ex. 4**, Appellate Docket Sheet. On or about February 12, 2019, the Michigan Court of Appeals affirmed the Court of Claims' dismissal, holding that Plaintiff's claims were barred by _res judicata_ and Plaintiff was not deprived of due process. **Ex. 5**, Order Affirming Court of Claims Dismissal.

**_The Fourth Prior Action._** Despite three adverse rulings in the state courts, Plaintiff sought leave to appeal the Michigan Court of Appeals' decision to the Michigan Supreme Court. **Ex. 4**. On November 20, 2019, the Michigan Supreme Court issued an order holding Plaintiff's application for leave to appeal in abeyance

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

pending the Court's decision in *2 Crooked Creek, LLC v. Cass County Treasurer*. *Id*.[2] There has been no ruling on this fourth action.

**<u>Rafaeli, LLC v Oakland County</u>.** The *Rafaeli* plaintiffs were former commercial property owners who brought an action against Oakland County and its treasurer to recover surplus funds from the sale of their properties following tax foreclosure. 505 Mich. 429, 438-39 (2020). The Michigan Supreme Court found that "defendants' retention of those surplus proceeds is an unconstitutional taking without just compensation under Article 10 § 2 of [Michigan's] 1963 Constitution." *Id*. at 437. The Supreme Court wrote that "a former property owner only has a right to collect the surplus proceeds from the tax-foreclosure sale; that is, a former property owner has a compensable taking claim if and only if the tax-foreclosure

---

[2] Although a decision in *2 Crooked Creek* was issued on March 16, 2021, Plaintiff's application for leave to appeal remains pending. (Ex. 4). On March 16, 2021, (that is, after the *Rafaeli* decision of July 2020), the Michigan Supreme Court issued an Order affirming the Court of Appeals' decision in *2 Crooked Creek*, upholding the view that a prior adjudication that a property owner's notice was adequate under the constitution or Michigan's General Property Tax Act could not sustain an action for money damages under the GPTA's section 78*l*.

The option refers to the property owner as "2CC" and holds that ". . . [p]roperty owners who received constitutionally adequate notice sufficient to satisfy the minimum requirements of due process under the GPTA would have necessarily received the notice required under the GPTA and, thus, could not sustain an action for monetary damages under MCL 211.78*l*(1). In this case, because 2CC had already been adjudicated to have received such notice, 2CC could not establish that it did not receive any notice required under the GPTA. Accordingly, the Court of Appeals correctly dismissed 2CC's action for monetary damages under MCL 211.78*l*(1), albeit for the wrong reasons."

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

sale produces a surplus." *Id*. at 477.  The Supreme Court made clear that its holding related only to the Michigan Constitution and rejected any finding that the Tax Act violated the United States Constitution.  *Id.*  It also rejected "lost equity" as the measure of damages for the violation: it "reject[ed] the premise that just compensation requires the plaintiffs to be awarded the fair market value of their properties, so as to be put in as good of [sic] position had their properties not been taken at all." *Id.* at 483.  Going forward, the Michigan Supreme Court noted that nothing "prevents the Legislature from enacting legislation that would require former property owners to avail themselves of certain procedural avenues to recover the surplus proceeds." *Id*. at 473 n.108.

***Amendments to the Tax Act***.  The Legislature took up the Michigan Supreme Court's invitation and on December 22, 2020, Governor Whitmer signed amendments of the Tax Act into law.  These bipartisan bills modified the Tax Act's "procedures by which a person with an interest in that property could pursue an interest in proceeds from the sale or transfer."[3]  The Legislature added Section 78t to the Tax Act, which provides that those who had their "property transferred or sold under section 78m before July 18, 2020," may make a claim for reimbursement only "if the Michigan Supreme Court orders that its decision in *Rafaeli* . . . applies

---

[3] *See* HOUSE FISCAL AGENCY, Legislative Analysis, *Tax-Delinquent Foreclosed Properties*, available at https://bit.ly/3azUrmh.

DYKEMA GOSSETT A PROFESSIONAL LIMITED LIABILITY COMPANY 400 RENAISSANCE CENTER DETROIT, MICHIGAN 48243

retroactively," and if the claimant complies with certain procedural requirements "pursuant to subsection (6)." MCL 211.78t(1)(b). Importantly, the statute provides "the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state" and provides a two-year statute of limitations for pursuing such claims. MCL 211.78t(11) and 78*l*.

## STANDARD OF DECISION

This Motion is premised on lack of jurisdiction and failure to state a claim.

Arguments implicating subject matter jurisdiction are "properly decided under [Rule] 12(b)(1)." *Am. BioCare Inc. v. Howard & Howard Attys, PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017). Rule 12(b)(1) provides for a motion to dismiss for lack of subject matter jurisdiction. To survive a 12(b)(1) motion, a plaintiff has the burden of proving jurisdiction. *Martinez v. Dep't of Homeland Security*, 502 F. Supp. 2d 631, 634 (E.D. Mich. 2007). When a Rule 12(b)(1) motion attacks "the claim of jurisdiction on its face"—as this one does—the standard mirrors Rule 12(b)(6). *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Two "working principles" underlie the Rule's pleading requirements. *Id.* "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

6

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.*

## ARGUMENT

## I.     Plaintiff's Claims Are Barred By *Res Judicata* And Collateral Estoppel.

In all four of his Prior Actions, Plaintiff raised claims regarding Defendants' alleged failure to comply with the Tax Act.  *See generally* Exs. 2, 4, 6, 8.  As Plaintiff has, or could have, raised these claims in the Prior Actions, they are now barred by *res judicata* and collateral estoppel.

The doctrine of *res judicata* is employed to prevent multiple suits litigating the same cause of action.  It bars subsequent actions between the same parties based upon identical evidence or facts.  *Eaton Co Bd of Co Pct Comm'rs v Schultz*, 205 Mich. App. 371, 375; 521 N.W.2d 847 (1994).  "A claim is barred by the res judicata effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action."  *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (internal quotations omitted).

Here, *res judicata* precludes Plaintiff from re-litigating any claims related to the validity of the foreclosure of the Property or his right to any funds resulting from the foreclosure of the Property because (i) the Prior Actions were initially decided on the merits when the Wayne County Circuit Court entered the Judgment of Foreclosure and the Michigan Court of Claims entered its Order Granting Summary Disposition, which the Michigan Court of Appeals affirmed; (ii) Plaintiff's claims regarding the validity of tax foreclosure and his right to any funds received in the Prior Actions are at issue again in this action; and (iii) the parties in the Prior Actions and this action are the same.  Thus, all elements of *res judicata* have been met; Plaintiff's claims are barred and should be dismissed.

Although *res judicata* precludes relitigation of previously adjudicated *claims,* collateral estoppel precludes relitigation of *issues or facts* that have already been decided in a prior litigation.  *Wilcox v. Sealy*, 132 Mich. App. 38, 47; 346 N.W.2d 889 (1984); *Montana v. United States*, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").  The requirements for *collateral estoppel* require that:

> (1) a question of fact essential to the judgment [in the second action] must have been actually litigated and determined by a valid and final

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN  48243

judgment [in the first action]; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; …[4]

*Lund v. Citibank*, 2007 U.S. Dist. LEXIS 84413, *2 (E.D. Mich. Nov. 14, 2007) (quoting *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006)).   With respect to the second element, "collateral estoppel may apply where the parties are not identical in a subsequent lawsuit." *Wilcox*, 132 Mich. App. at 47.  "Substantial identity, not precise identity, is all that is required." *Id*. (quotations and citations omitted).

For the very reasons that his claims are barred by *res judicata*, Plaintiff is also precluded from re-litigating the same issues or facts that were decided in the prior actions.   There can be no dispute that the prior actions culminated in valid, final judgments.   There also can be no dispute that the facts and issues surrounding the foreclosure of the Property were actually litigated and necessarily determined as part of those earlier proceedings.   Accordingly, collateral estoppel bars the re-litigation

---

[4] There is also a third requirement, a mutuality of estoppel, to the collateral estoppel doctrine.   Nonetheless, "[m]utuality…is not required, where collateral estoppel is used defensively. *Lund*, 2007 LEXIS 84413, at *2 (citing *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 691-92; 677 N.W.2d 843 (2004) ("[W]e believe that the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue that such party had already had a full and fair opportunity to litigate in a prior suit.").)   Because Defendants are using collateral estoppel defensively in this case, mutuality is not required.

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN  48243

of those issues and facts.  As such, Plaintiff's Complaint should be dismissed with prejudice.

## II. Plaintiff's Claims Are Barred By The *Rooker-Feldman* Doctrine.

Plaintiff's Complaint also should be dismissed because, under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to consider Plaintiff's claims.  The foundation for the *Rooker-Feldman* Doctrine was set in two United States Supreme Court decisions:  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Both *Rooker* and *Feldman* interpret 28 U.S.C. § 1257(a), a statute providing that a final judgment of the highest court of a state may be reviewed by the United States Supreme Court. Lower federal courts may not engage in appellate court review of state judgments, because that function is vested solely in the United States Supreme Court.  *Lawrence v. Welch*, 531 F.3d 364, 368-69 (6th Cir. 2008) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005) ("*Exxon*")); *see also Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (noting that the Supreme Court has exclusive jurisdiction over appeals from final state-court judgments (citing *Lance v. Dennis*, 546 U.S. 459, 463 (2006))).  The Supreme Court has clarified that the *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-

court judgments … and inviting district court review and rejection of those judgments." *Exxon*, *supra,* 544 U.S. at 284.

Since *Exxon*, in determining whether *Rooker-Feldman* bars district court jurisdiction, the relevant question becomes: Is the state court judgment the source of the injury upon which plaintiff bases his federal claim? *Lawrence*, 531 F.3d at 368-69. When the answer to that question is yes, as it is here, then the *Rooker-Feldman* doctrine prevents district court review. *Id.* (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)).

Here, Plaintiff's claim that the foreclosure was improper is necessarily a challenge to the Judgment of Foreclosure entered by the Wayne County Circuit Court. The Complaint in this federal action makes that explicit. Paragraph 7 asserts that the "taking" of the Property:

> occurred as a consequence of Defendant's County Treasurer (pursuant to a judgment for foreclosure entered in the Wayne County Circuit Court pursuant to MCL 211.78k on March 20, 2015, *without providing Plaintiff with notice that was reasonably calculated to provide Plaintiff with the opportunity to be heard and to avert a foreclosure)* refusing to accept payment from Plaintiff of the unpaid delinquent real estate tax . . . and thereafter selling [the] Property in September 2015 at a tax sale.

(emphasis added).

In other words, to succeed in this case, Plaintiff must convince the Court that the Judgment of Foreclosure never should have been entered. That is a matter

reserved for decision in the state courts of Michigan, appealable only to the United States Supreme Court, and should not be reviewed in this Court.

To allow this case to proceed would be to allow Plaintiff to attack the State Court Action in a federal court, which is impermissible under the *Rooker-Feldman* doctrine. *See Kost v. Kreeger*, 832 Fed. App'x. 438, 439 (6th Cir. 2021) (affirming *Rooker-Feldman*-based dismissal of plaintiffs' complaint relating to real property, because although the doctrine "applies only to an exceedingly narrow set of cases, this is one of them."), *quoting Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 400 (6th Cir. 2020); *Givens v. Homecomings Fin.,* 278 Fed. App'x. 607, 609 (6th Cir. 2008) (where mortgagor brought claim in federal court against mortgagee after state court granted mortgagee possession of residence, Sixth Circuit upheld district court ruling that it lacked jurisdiction under *Rooker-Feldman* because action was attempted appeal of state court order). That is particularly true here, where Plaintiff's claims are currently held in abeyance by the Michigan Supreme Court; as explained above, only the United States Supreme Court has the power to review a Michigan Supreme Court decision. Therefore, this Court lacks jurisdiction to adjudicate Plaintiff's claims and the Complaint should be dismissed.

## III.   Defendants Are Entitled To Sovereign Immunity.

Even if this Court does not find that Plaintiff's claims are barred by *res judicata*, collateral estoppel, or the *Rooker-Feldman* doctrine – and it should – the

DYKEMA GOSSETT A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

claims also are subject to dismissal on the grounds of sovereign immunity.  Under the Eleventh Amendment, a "damages action against a State in federal court" is barred "when state officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009) ("The Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages."). Municipalities are not usually considered state actors, but "[w]here county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State." *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999).

That is the case here.  Plaintiff's claims against Wayne County and its Treasurer center on their compliance with a statute that prohibited them from paying Plaintiff "excess funds" received after the sale of the Property at tax foreclosure. MCL 211.78m(8) provides that "foreclosing governmental unit[s] *shall* deposit the proceeds from the sale of property under this section into a restricted account designated as the 'delinquent tax property sales proceeds for the year ___.'" *Id.* (emphasis added).  It further states that:

> Proceeds in that account *shall only be used by the foreclosing governmental unit for the following purposes in the following order of priority*: (a) The delinquent tax revolving fund shall be reimbursed for all taxes, interest, and fees on all of the property, whether or not all of the property was sold. (b) All costs of the sale of property for the year shall be paid. (c) Any costs of the foreclosure proceedings for the year, including, but not limited to, costs of mailing, publication, personal service, and outside contractors shall be paid . . . .

*Id.* (emphasis added).  The Legislature directed foreclosing governmental units to spend "excess surplus" in specific ways, none of which is to reimburse the delinquent taxpayer.

State and federal courts examining this issue recognize the constraints imposed on foreclosing governmental units.  In *Wayside Church*, Judge Kethledge noted that "[i]n the County's defense, the Michigan Act appears actually to *require* the County to short the taxpayer the difference between the value of the property forfeited and the amount of taxes and penalties owed."  847 F.3d at 824 (Kethledge, J., dissenting) (emphasis in original).  Judge Friedman of this District Court has stated similarly.  *Freed v. Thomas*, 2018 U.S. Dist. LEXIS 190424, at *5 (E.D. Mich. 2018), *vacated on other grounds* ("It is unconscionable that the Michigan legislature has seen fit to adopt a property taxation system that not only permits but requires county treasurers to take title to real property when the taxes thereon are not timely paid and to then retain all of the proceeds obtained for the property at auction").  So has the Michigan Supreme Court.  *Rafaeli*, 505 Mich. at 448 ("Michigan is one of nine states with a statutory scheme that *requires* the foreclosing governmental unit to disperse the surplus proceeds to someone other than the former owner") (emphasis added).

Michigan's legislature required foreclosing governmental units (including Defendants) to distribute surplus proceeds in a specific way.  Defendants did only

what State law required of them, and so "by simply complying with state mandates that afford no discretion, they act[ed] as an arm of the State, not the county." *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (internal quotation omitted). Plaintiff's claims are therefore barred by sovereign immunity. *Id.*; *see Ladd v. Marchbanks*, 971 F.3d 574, 579-80 (6th Cir. 2020) (federal takings claim for monetary, declaratory relief dismissed due to sovereign immunity).

## IV.    Claims Against Treasurer Sabree Should Be Dismissed.

Plaintiff's claims against Wayne County Treasurer Eric Sabree are subject to dismissal for other reasons, too. ***First***, as the Sixth Circuit recognized in *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016), "the Supreme Court has *never* denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated." 810 F.3d at 441 (emphasis in original). Before the Michigan Supreme Court's reversal, the Michigan's Court of Appeals held that counties' enforcement of the GPTA's requirements was constitutional. *Rafaeli*, 505 Mich. at 441(Court of Appeals found that GPTA's statutory scheme did not violate due process). The existence of this "split by itself amply supports [the Treasurer's] position" that he did not violate a *clearly established* law. *Husted*, 810 F.3d at 443 ("If judges can reasonably disagree about the meaning of the Constitution, we should not punish public officials for reasonably picking one side or the other of the debate.").

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

***Second***, these claims are duplicative of the claims raised against the County itself. Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978). When the county is named, there is no need to name the county's officers in their official capacities. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996); *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 602 (E.D. Mich. 2016) ("An official-capacity claim is redundant where the entity is named as a defendant.") (citing *Foster v. Michigan*, 573 F. App'x. 377, 390 (6th Cir. 2014)). *See also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (affirming the judgment of the Michigan Supreme Court and holding that, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself") (internal citations omitted). Treasurer Sabree is not liable for the alleged violations claimed by Plaintiff, and any claims against him should therefore be dismissed.

## V.   Plaintiff's Claims For Violations Of The U.S. Constitution Should Be Dismissed.

Plaintiff alleges that "Defendants' taking of Plaintiff's equity in his Property by retaining the surplus of proceeds from the Tax Sale . . . constitutes a taking without just compensation; and constitutes a violation of 42 USC §1983, as a taking of property by the County of Wayne, State of Michigan, without just compensation."

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

(Compl. ¶ 46). But the Michigan Supreme Court's decision in *Rafaeli* made clear that its holding related only to the Michigan Constitution; the Court rejected any finding that the Tax Act violated the U.S. Constitution. 505 Mich. at 477.

In conducting an historical review of claims for surplus proceeds, the Michigan Supreme Court reasoned that "the Takings Clause under the United States Constitution may afford former property owners a remedy when a tax-sale statute provides the divested property owner an interest in the surplus proceeds and the government does not honor that statutory interest." *Id.* at 461. But because the Tax Act "does not recognize a former property owner's statutory right to collect these surplus proceeds" themselves, federal law does not apply. The *Rafaeli* court looked to common law and the Michigan Constitution instead, concluding that only the state Constitution "protects a former owner's property right to collect the surplus proceeds following a tax-foreclosure sale." *Id.* at 461, 473. Because *Rafaeli*'s interpretation of the Michigan statute rejected a federal constitutional violation, alleged violations of the U.S. Constitution and federal constitutional rights should be dismissed.[5]

---

[5] One panel of the Sixth Circuit – in a divided opinion – held that a federal court can entertain a Takings claim under the U.S. Constitution in a tax foreclosure surplus case. *Freed v. Thomas,* 976 F.3d 729 (6th Cir. 2020). The *Freed* majority decision, criticized by former Michigan Supreme Court Justice and now Sixth Circuit Judge Joan Larsen in her dissent for its failure to follow the recent precedent of *Wayside Church,* is recent and may be subject to further appeal.

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

## VI.   *Rafaeli* Is Prospective Only And Bars These Claims.

Nothing in *Rafaeli*'s text supports a presumption that *Rafaeli* should apply retroactively.  *Rafaeli* is silent as to its retroactivity, and silent as to any discussion of its implementation.  It is risky to presume that *Rafaeli*'s holding would be applied retroactively.  "*[W]here injustice might result from full retroactivity*, this Court has adopted a more flexible approach, giving holdings limited retroactive or prospective effect.  This flexibility is intended to accomplish the 'maximum of justice' under varied circumstances." *Lindsey v. Harper Hosp.,* 455 Mich. 56, 68 (1997) (emphasis added).  Full retroactivity of the *Rafaeli* decision would be catastrophic.  Since the Tax Act was overhauled in 1999, every county in Michigan has relied on the Act's required retention of surplus sale proceeds.  Oakland County estimates that retroactive application of *Rafaeli* would likely cost it between $40 and $50 million dollars.[6]  Forcing counties to pay back years of surplus funds would have unimaginable impact on operating budgets and could cause unreasonable harm to a county's ability to provide necessary services.  This long-term reliance on settled law, and the disruption that would result if the new ruling "looks back," means that *Rafaeli* is not suitable to be applied retroactively.

---

[6] Cavitt, *Oakland County May Have to Payback $50 Million to Former Property Owners*, Oakland Press, July 22, 2020, https://bit.ly/3oMgs6e.

Further, the *Rafaeli* decision was an issue of first impression, the resolution of which was not clearly foreshadowed. This unpredictability is evidenced by the multiple actions in the Michigan Court of Appeals where judgment had already been entered in favor of defendant counties when *Rafaeli* was decided by the Michigan Supreme Court. This universal reliance by counties and courts on the Tax Act's requirement that excess funds go to a county tax revolving fund obliges *Rafaeli* to be applied only prospectively. And the Michigan Supreme Court has held that it "must take into account the total situation confronting it and seek a just and realistic solution of the problems occasioned by [a change in law]." *Williams v. Detroit*, 364 Mich. 231, 265 (1961). A retroactive application of *Rafaeli* is unsupported not only by the holding itself, but also by the factors set out by the Michigan Supreme Court for analysis of whether a change to state law should be retroactive[7]

**_An Unexpected Change In Law_**. "Prospective application of a holding is appropriate when the holding overrules settled precedent or decides an 'issue of first impression whose resolution was not clearly foreshadowed.'" *Lindsey*, 455 Mich. at 68. Nothing could be said to have "clearly foreshadowed" the unanticipated *Rafaeli* holding. It overrules settled precedent, has created a firestorm of litigation,

---

[7] "When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." *Am. Trucking Ass'n v. Smith*, 496 U.S. 167, 177 (1990).

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN 48243

and has every county in the State trying to understand and plan for the drastic change

in tax foreclosure law imposed by this decision. These facts require prospectivity.

In *Bolt v. City of Lansing*, 238 Mich. App. 37 (1999), the Court of Appeals was

tasked with deciding if the Michigan Supreme Court's holding on whether a

municipal stormwater charge is a user fee or a tax should be applied retroactively to

other cases brought by plaintiffs in other municipalities. *Id*. at 45. In determining

that retroactive application was not appropriate, the court noted that the

> decision announced a new and unanticipated rule of law concerning a
> significant public issue of first impression, i.e., whether a charge
> assessed to property owners to fund a federally mandated project is a
> user fee, or a tax subject to the Headlee Amendment requirements. The
> Supreme Court's resolution of this issue differs from case law
> addressing the user fee/tax inquiry in other contexts.

*Id*. at 45-46. The *Bolt* analysis is directly applicable here: the Michigan Supreme

Court pronounced "a new and unanticipated rule of law concerning a significant

public issue of first impression," which directly impacts the rights of owners,

municipalities, lienholders, and others with interest in real property. *Id*.

*Rafaeli* is a complete departure from the Michigan Supreme Court's long-

standing decisions in *Krench v. Michigan*, 277 Mich. 168, 179 (1936); *James A*

*Welch Co, Inc. v. State Land Office Bd.*, 295 Mich. 85, 93-95 (1940); and *Meltzer v.*

*State Land Office Bd.*, 301 Mich. 541, 545 (1942), which established that former

owners have no interest in property once a tax foreclosure is final. And *Rafaeli's*

finding that a right remains after foreclosure completely rewrites a concept of

property law nearly a century old, a result that is disfavored under Michigan law.

The state Supreme Court urges restraint under such circumstances:

> Established rules of property law are to be strictly followed where the rules have induced extensive reliance. Such rules create value, and the passage of time induces a belief in their stability that generates commitments of human energy and capital. Because of the effect a judicial decision might have on past as well as future property rights, a change in a rule of property law should be avoided.

*Bott v. Comm'n of Nat. Res.*, 415 Mich. 45, 57 (1982).

***Purpose, Reliance, Effect, and Novelty***.  "In deciding whether to give retroactive application, 'there are three key factors' to be considered: '(1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice.'"  *Jahner v. Dept. of Corr.*, 197 Mich. App. 111, 114 (1992) (quoting *People v. Hampton,* 384 Mich. 669, 674 (1971)).  Ten years after *Jahner*, Michigan added a fourth factor: (4) "whether the decision clearly established a new principle of law."  *Pohutski v. City of Allen Park,* 465 Mich. 675, 696 (2002).  They all favor prospective application of *Rafaeli*.  And flexibility is needed to avoid disruption:  "If a court were absolutely bound by the traditional rule of retroactive application, it would be severely hampered in its ability to make needed changes in the law because of the chaos that could result in regard to prior enforcement under that law."  *Placek v. City of Sterling Hts.*, 405 Mich. 638, 665 (1979).

**First**, the **purpose** of the *Rafaeli* holding was to set aside the common understanding of certain provisions of the Tax Act, to end infringement of the state

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

constitutional prohibition against taking property without just compensation.  The Michigan Supreme Court has held that *prospective* application is appropriate when a ruling is needed to correct an interpretation of the law. *Pohutski*, 465 Mich. at 697.

    ***Second***, **reliance** on the prior rule was substantial.  Every county in Michigan relied on the Tax Act's requirement that sale proceeds be used to pay delinquent taxes from *all properties*, and for the costs of foreclosures and foreclosure auctions. Notably, the Michigan Supreme Court has held that "'[t]he involvement of vested property rights, the magnitude of the impact of decision on public bodies taken without warning or a showing of substantial reliance on the old rule may influence [whether a holding should be applied retroactively or prospectively.]'" *Tebo v. Havlik*, 418 Mich. 350, 360 (1984) (internal citations omitted).

    Counties across Michigan relied on the established holding of Michigan courts that a foreclosure removes all right, title, and interest in that property. Applying *Rafaeli* retroactively would result in significant injustice to the counties and their citizens; most excess sale proceeds have already been used by those counties to reimburse the delinquent tax revolving fund and other expenses allowed under MCL 211.78m(8), or to address blight in their communities.  The number of purported class actions pending across the state, including several that attempt to include **all** Michigan counties as defendants, clearly indicates the prior universal understanding of foreclosure surplus law.  Several courts ruled in favor of the

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

counties on the surplus funds issue before *Rafaeli*; and there has been significant and "justifiable reliance on court precedent[.]" *Jahner*, 197 Mich. App. at 115.

**Third**, *Rafaeli* should be applied only prospectively because the ***effect*** on the administration of justice would be ruinous, particularly in counties where tax foreclosures are more numerous. The *Pohutski* decision is instructive: homeowners filed class actions against two cities after sewage backed up into basements after a storm. The trial courts granted summary disposition to plaintiffs as to their trespass-nuisance claims, holding that those claims were a long-recognized exception to the governmental immunity protection afforded by the state's government tort liability statute. 465 Mich. at 680-81. The Michigan Supreme Court reversed, holding that the governmental immunity statute did not contain an exception for trespass-nuisance claims brought against cities or other subdivisions of the State. *Id*. at 690. In doing so, the court expressly overruled prior precedent and established a new rule affecting every Michigan city. The court applied its decision only prospectively, because retroactivity would wreak havoc on the long-standing shift – by insurance, purchased by cities but not by homeowners – for damage from sewer back-ups.

Significantly, the *Pohutski* court also noted recently-passed legislation addressing claims for sewer back-ups, a statute that created a process and time limit for seeking relief for such claims. That legislation, the court found, should not be interfered with by imposing retroactive application of a new rule of law. The

DYKEMA GOSSETT • A PROFESSIONAL LIMITED LIABILITY COMPANY • 400 RENAISSANCE CENTER • DETROIT, MICHIGAN  48243

Michigan Supreme Court concluded that "prospective application minimizes the effect of this decision on the administration of justice." *Id.* at 697. Here too the Michigan legislature took up the state-wide complications and unanswered questions of *Rafaeli,* significantly amending the Tax Act only five months after that Supreme Court decision. Only prospective application will allow this legislative solution to sort out the ramifications of *Rafaeli* on pre-existing events.

The Michigan Court of Appeals has spoken directly to the importance of avoiding disruption of settled adjudications: where a prisoner-plaintiff sought to have his major misconduct reports deemed retroactively invalid under a recent Supreme Court holding, the appeals court declined to apply that holding retroactively. *Guerrero v. Dept of Corr.*, 165 Mich. App. 192 (1987). "[R]etroactive invalidation of the instant disciplinary directives would void literally tens of thousands of disciplinary proceedings and could trigger the early inappropriate release of large numbers of inmates. . . the public's interest in safety requires that [this invalidation] not be given retroactive application." 165 Mich. App. at 196-97.

If *Rafaeli* is applied retroactively, surplus funds from thousands of foreclosed properties across the State would need to be returned. The monies to repay these funds would necessarily come from the refunding county's operating budget, which would harm that county's ability to provide vital and emergency services to its residents. Layoffs and restricted services would follow. This abrupt reversal in the

DYKEMA GOSSETT A PROFESSIONAL LIMITED LIABILITY COMPANY 400 RENAISSANCE CENTER DETROIT, MICHIGAN 48243

law should be applied prospectively, allowing claims that arose only after the date of the *Rafaeli* decision.

## VII. The Applicable Limitations Period Bars Plaintiff's Claims.

Plaintiff's claims are barred by a two-year limitations period. The post-*Rafaeli* amendment of the Tax Act acknowledges that, for properties foreclosed before July 18, 2020, "a claim may be made only if the Michigan supreme court orders that its decision in *Rafaeli* [] applies retroactively." MCL 211.78t. And the Tax Act provides that "the owner of any extinguished recorded or unrecorded interest in that property shall not bring an action . . . more than 2 years after the judgment of foreclosure of the property is effective." MCL 211.78*l*.[8] Here, the state court entered a judgment of foreclosure on March 20, 2015. (Ex. 1). Plaintiff's limitations period expired on March 20, 2017. He did not file suit until April 2021.

## CONCLUSION

The Court should dismiss all claims pursuant to Rules 12(b)(1) and 12(b)(6).

Respectfully submitted,

**DYKEMA GOSSETT PLLC**
By: /s/ Nasseem S. Ramin

Dated: May 21, 2021　　　　Nasseem S. Ramin (P73513)

---

[8] Section 78t provides the "exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds," which involves submitting a specific form to the foreclosing governmental unit.

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY• 400 RENAISSANCE CENTER• DETROIT, MICHIGAN 48243

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2021, my assistant electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will provide notice of such filing to all parties and counsel of record.

/s/ Nasseem S. Ramin